OPINION
The State of Ohio has appealed the trial court's decision dismissing five counts of illegal processing of drug documents in violation of R.C.2925.23(A). Defendant-Appellee Dawn Peeler, a licensed practical nurse, was also indicted on one count of theft of drugs, which is not a subject of this appeal. The trial court's decision dismissing the five counts was issued following a hearing on a motion in limine filed by Peeler. The motion in limine sought to prevent the state from presenting at trial the "proof-of-use" sheets and the "Medication Administration Reports" (MARs). Those documents evidently formed the basis for the charges against Peeler. Unfortunately, the documents are not part of the record.
The state has appealed the trial court's decision raising the following assignment of error:
 The trial court erred when it dismissed five counts of the indictment because the state properly charged Peeler and has no burden to prove its entire case during a preliminary motion in limine hearing.
Within this assignment of error, the state has essentially raised two arguments. First, the state argues that the court incorrectly held that R.C. 2925.23 did not apply to Peeler. Second, the state contends that the trial court improperly dismissed the counts following a motion in limine hearing. We will address these arguments in order.
At the hearing on the motion in limine, Peeler called two witnesses, a compliance specialist from the Board of Pharmacy who investigated this case and the licensed nursing home administrator at Washington Manor, the nursing home where Peeler was employed. Testimony from these individuals established the process for the receipt of drugs at Washington Manor. First, the patient's doctor writes a prescription that is sent directly to the pharmacy. The pharmacy, which is usually Beaver Pharmacy, then fills the prescription to the doctor's specifications and sends the drugs to the nursing home. The pharmacy bills either the patient or the patient's insurance company directly, without involving the nursing home. Once the drugs are received at the nursing home, they are placed directly onto the medication cart for the hall in which the patient resides. The nurses, such as Peeler, then administer the drugs to the patients from that cart.
Following a detailed statutory analysis on the record, the trial court determined that R.C. 2925.23 does not apply to Peeler's actions in this case. R.C. 2925.23(A) provides that "[n]o person shall knowingly make a false statement in any prescription, order, report, or record required by Chapter 3719. or 4729. of the Revised Code." (Emphasis added). Therefore, R.C. 2925.23 can only be violated if the document allegedly containing the false statement is required by one of those statutes. Chapter 4729 applies only to pharmacists, so that chapter is not relevant to our discussion.
Chapter 3719 is Ohio's version of the Uniform Controlled Substances Act. The section at issue in this case is R.C. 3719.07, "Records of controlled substances." Under subsection (B) of this section, the statute lists four different categories of individuals who are required to keep records of controlled substances. All parties agree that (2) and (4) do not pertain to Peeler, so we will limit our discussion to (1) and (3). R.C. 3719.07(B)(1) states:
 Every licensed health professional authorized to prescribe drugs shall keep a record of all controlled substances received and a record of all controlled substances administered, dispensed, or used other than by prescription. Every other person, except a pharmacist, manufacturer, or wholesaler, who is authorized to purchase and use controlled substances shall keep a record of all controlled substances purchased and used other than by prescription. The records shall be kept in accordance with division (C)(1) of this section.
(Emphasis added). We recognize that this subsection delineates different requirements for healthcare professionals licensed to prescribe medication and "every other person." The licensed healthcare professionals who can prescribe medication are the only ones required to record all drugs "administered, dispensed or used other than by prescription." The requirement for all others is limited to recording only when drugs are purchased or used other than by prescription. Peeler and the nursing home cannot prescribe medication, so they would only be required to record controlled substances "purchased" or "used" other than by prescription. We find no evidence that the nursing home handled controlled substances other than those sent to the facility pursuant to a prescription. In addition, we find it persuasive that the true function of the nurses employed by Washington Manor, administering the medication, is conspicuously omitted as a requirement for anyone other than a healthcare professional licensed to prescribe drugs.
Furthermore, there is no evidence in the record that a nursing home is authorized to purchase these controlled substances directly. We were also unable to find a statutory definition of "use" which would include administering drugs to patients. We find that would require an overbroad application of the word "use."
Moreover, we examined the previous version of this statute for guidance in what the legislature intended. In the previous version, the statutory language was "authorized to administer or use," instead of "authorized to purchase and use." (Emphasis added). "Administer" is defined as "the direct application of a drug, whether by injection, inhalation, ingestion, or any other means to a person or an animal." The prior language would clearly apply to nursing homes as they administer drugs to patients on a daily basis. In addition, the records required in the previous version of the statute were of "all controlled substances received, administered, dispensed, or used." This language also differs from the current statute, which only requires documentation of those drugs "purchased and used." It appears from this change in the statute that the legislature intended to narrow the class of individuals required to keep records and the record-keeping requirements under this subsection.
As a result, we find that subsection (B)(1), as it read at the time of the alleged offense, does not apply to Peeler.
We now move to subsection (B)(3) which states:
 Every category III terminal distributor of dangerous drugs shall keep records of all controlled substances received or sold. The records shall be kept in accordance with division (C)(3) of this section.
There is no dispute that a nursing home is a terminal distributor of dangerous drugs pursuant to the definition found in R.C. 4729.01(Q), which explicitly includes nursing homes. Further, the parties do not dispute that Washington Manor receives dangerous drugs from the pharmacy for its residents. Therefore, we must look to subsection (C)(3) to ascertain the record-keeping requirements.
In this regard, R.C. 3719.07(C)(3) states:
 The records required by divisions (B)(3) and (4) of this section shall contain the following:
 (a) The description of controlled substances received, the name and address of the person from whom controlled substances are received, and the date of receipt;
 (b) The name and place of residence of each person to whom controlled substances, including those otherwise exempted by section 3719.15 of the Revised Code, are sold, the description of the controlled substances sold to each person, and the date the controlled substances are sold to each person.
Testimony at the hearing established that the nursing home receives controlled substances from the pharmacy, and therefore it is required to comply with R.C. 3719.07(C)(3)(a), documenting the receipt of controlled substances. However, according to the trial court's decision, documentation of the receipt of the drugs is not at issue in this case. Again, we do not have the proof-of-use sheets or the MARs in the record to determine what Peeler allegedly falsified. Because neither party disputed that documentation on the receipt of the drugs was not at issue, we will assume for our purposes that it was not.
We now come to what we believe is the heart of this case, and that is whether R.C. 3719.07(C)(3)(b) applies to Peeler and Washington Manor. This subsection requires a terminal distributor of dangerous drugs to document information regarding to whom the drugs "are sold." Peeler contends, and the trial court agreed, that Washington Manor did not "sell" the drugs and therefore was not required to document any information regarding any "sale." Sale is defined as: "delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." R.C. 3719.01(AA).
While the activity engaged in by the nurses at Washington Manor could arguably constitute "delivery," the statute does not specifically define that term. Additionally, we find it persuasive that there is a separate definition for "administer," which is the nurses' true function. Administer is defined as "the direct application of a drug, whether by injection, inhalation, ingestion, or any other means to a person or an animal." According to the testimony, the pharmacy actually delivers the drugs to the nursing home where the patient resides and bills the patient or his insurance carrier directly. Consequently, the nursing home is not involved in the "sale." Its sole function is to receive the delivery from the pharmacy and to administer the drugs to the patient. We find it to be a stretch of the definition of "sale" to include the nurses' walk down the hall to the patient's room with the drugs.
Again we find the previous version of the statute to be somewhat helpful. The previous version of R.C. 3719.07 required that a terminal distributor of dangerous drugs keep records of "each person to whom controlled substances * * * are dispensed," instead of sold. "Dispensed" is defined as "to sell, leave with, give away, dispose of, or deliver." According to this definition, which incorporates "to sell," dispense is a much broader term than sale. While we still do not believe the term "dispensed" would include the nurses' actions in this case, we find it to be closer to the nursing home's actions than the current use of the word "sold." In any event, we believe that the legislature intended to narrow the application of this statute by replacing "dispensed" with "sold," and we do not believe that the nursing home sells controlled substances within the definition of the statute.
Finally, this case revolves around whether the documents allegedly falsified by Peeler were required by R.C. 3719.07. These documents were never proffered into evidence or supplemented into the record on appeal. We know from the briefs and the trial court's decision that they are "proof-of-use" sheets and "MARs." However, without the actual documents, we have no way of knowing whether these documents actually recorded either the receipt or the "sale" of controlled substances as contemplated in R.C. 3719.07(C)(3). As a result, we cannot say for certain that the trial court erred in finding the documents were not required by R.C.3719.07.
Next, the state argues that the trial court improperly dismissed the counts based on a motion in limine hearing. The motion in limine filed by Peeler requested that the state not be allowed to introduce the documents allegedly falsified by Peeler, the proof-of-use sheets and MARs. When determining whether an indictment was properly dismissed, we must not examine the quantity or quality of the state's evidence, but we may only determine whether the indictment charged an offense under Ohio law. State v. Miller (Dec. 4, 1998), Montgomery App. No. 17273, unreported, at p. 3, citing State v. O'Neal (1996), 114 Ohio App.3d 335, 336. If the indictment does charge an offense, then a trial court may not dismiss it pre-trial. Id.
While we agree that a motion to dismiss was not technically before the trial court, we find the dismissal of the counts to be proper. Based on our above discussion, the five counts of the indictment charging Peeler with illegal processing of drug documents did not charge an offense under Ohio law. R.C. 2925.23 is only violated if the documents allegedly falsified are required under Chapter 3719 or 4729. Because the documents allegedly falsified by Peeler were not required by those statutes, those five counts of the indictment were not valid on their face. Furthermore, after the court's oral ruling on the motion in limine, the state admitted that, if it were not permitted to use the documents, it would have insufficient evidence to prove those counts. Accordingly, the trial court did not err in sua sponte dismissing Counts 2 through 6 when it sustained the motion in limine.
Judgment affirmed.
YOUNG, J., concurs. GRADY, J., dissentS.